# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MARY CRUMPTON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 1:21-cv-1402 |
| v. | ) ) | Judge Rebecca R. Pallmeyer |
| HAEMONETICS CORPORATION, a Massachusetts corporation, | ) ) ) | Magistrate Judge Jeffrey T. Gilbert |
| Defendant. | ) ) | |

## <u>DECLARATION OF ALEXANDER P. STEFFAN</u>

I, Alexander P. Steffan, being duly sworn, testify and state as follows:

1.      I am an individual resident of the Commonwealth of Massachusetts, have personal knowledge of the facts set forth in this declaration, and could competently testify to the facts set forth in this declaration if called upon to do so. I provide this Declaration in support of Haemonetics Corporation's ("Haemonetics") Motion to Dismiss for Lack of Personal Jurisdiction.

2.      I have been a Haemonetics employee for over twelve years. I am currently Vice President, Plasma Business Development of Haemonetics, a position I have held for over two years. In that position, I am responsible for the development of new Plasma business opportunities and expansion of existing commercial relationships.

3.      Haemonetics is incorporated in Massachusetts and maintains its corporate headquarters in Massachusetts. Haemonetics has no corporate offices in Illinois and has had no physical facility in Illinois since July 2019. Haemonetics does not own, rent, lease, or maintain any physical offices in Illinois. Haemonetics does not have a mailing address or telephone listing in Illinois. Haemonetics has never been headquartered or incorporated in Illinois.

4.      Haemonetics does not maintain any bank accounts in Illinois.

5.      The Complaint in this matter was filed on February 4, 2021. As of February 4, 2021, Haemonetics did not have a registered agent for service of process in Illinois. The Complaint in this case was served on Haemonetics' registered agent in Massachusetts.

6.      Haemonetics offers its customers software and services in the area of blood management. Haemonetics markets these offerings across the United States, wherever its customers are located, and does not target its marketing activities at customers in Illinois. Likewise, Haemonetics does not market its software or services to individual residents of Illinois.

7.      I have reviewed Ms. Crumpton's Complaint in the above-referenced case, which identifies one of Haemonetics' software products called the eQue donor management software and one of Haemonetics' customers, Octapharma. Complaint, ¶¶28-31. Ms. Crumpton alleges in a separate case filed under the Illinois Biometric Information Privacy Act that Octapharma is a Delaware corporation with its headquarters in North Carolina. *See* Exhibit A. Like Octapharma, Haemonetics' other customers for its donor management software product are incorporated and headquartered outside of Illinois.

8.      Haemonetics offers a donor management software product that allows Haemonetics' customers to manage information about donors at the customers' blood or plasma donation facilities. Haemonetics' donor management software is available for sale throughout the United States, wherever Haemonetics customers are doing business. Haemonetics does not employ sales people in Illinois for the sale of its donor management software products and does not direct to Illinois its sales activity for donor management software products. Haemonetics does not choose in what locations its donor management software product is deployed by its customers. Haemonetics does not offer any installation, setup-related services, or technical support services for its donor management software products onsite in Illinois.

9.    Haemonetics does not require its customers to use any specific form of verification for donor eligibility. The choice of how to verify donors is decided by each customer individually. Haemonetics has no relationship with its customers' donors—any such relationship is dictated by the interactions between Haemonetics' customers and their donors.

10.    Haemonetics understands that its customers have processes in place to obtain consent from donors during the course of the blood or plasma donation process. Haemonetics cannot dictate to its customers how or in what form the customers obtain consent from Illinois donors.

11.    Out of Haemonetics' over 2700 employees, Haemonetics' records reflect that it had seventeen employees who resided in Illinois at the time the Complaint was filed. Each of those seventeen employees work from home or a remote location that is not owned, leased, or possessed by Haemonetics.

12.    None of the employees who work on the team that is responsible for Haemonetics' donor management software referenced in Ms. Crumpton's Complaint reside in Illinois.

13.    Haemonetics does not maintain any data on computer servers within the State of Illinois.

14.    I declare under penalties as provided by law pursuant to the laws of the United States of America that the foregoing is true and correct.

EXECUTED ON MARCH 19, 2021

_____
ALEXANDER P. STEFFAN

# EXHIBIT A

FILED DATE: 12/2/2019 10:34 AM   2019CH13850

**12-Person Jury**

Return Date: No return date scheduled
Hearing Date: 3/31/2020 10:00 AM - 10:00 AM
Courtroom Number: 2405
Location: District 1 Court
    Cook County, IL

FILED
12/2/2019 10:34 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH13850

7551064

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

MARY CRUMPTON, individually and on behalf of all others similarly situated,

       *Plaintiff*,

    v.

OCTAPHARMA PLASMA, INC., a Delaware corporation,

       *Defendant*.

Case No.:

**2019CH13850**

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Mary Crumpton brings this Class Action Complaint and Demand for Jury Trial against Defendant Octapharma Plasma, Inc. ("Octapharma") to put a stop to its unlawful collection, use, and storage of Plaintiff's and the putative Class members' sensitive biometric data. Plaintiff, for her Class Action Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief.

### NATURE OF THE ACTION

1.     Defendant Octapharma operates a nationwide chain of blood plasma donation centers with locations throughout the State of Illinois, including in Cook County.

2.     When consumers donate plasma at Octapharma, they are required to scan their fingerprints and enroll in Octapharma's customer membership database.

3.     While most membership management programs use conventional methods for verifying customers (like identification cards), Octapharma's customers are required to have their fingerprints scanned.

Exhibit A

FILED DATE: 12/2/2019 10:34 AM   2019CH13850

4.     Unlike identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with a consumer. This exposes consumers to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, consumers have no means by which to prevent identity theft and unauthorized tracking.

5.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

6.     Despite this law, Octapharma disregards its customers' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Octapharma has violated the BIPA because it did not:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain fingerprints, as required by the BIPA.

7.     Accordingly, this Complaint seeks an order: (i) declaring that Defendant's conduct violates the BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

## PARTIES

8.     Plaintiff Mary Crumpton is a natural person and citizen of the State of Illinois.

9.     Defendant Octapharma is a corporation existing under the laws of the State of Delaware with its headquarters located at 10644 Westlake Drive, Charlotte, North Carolina

FILED DATE: 12/2/2019 10:34 AM    2019CH13850

28273. Octapharma has also been registered to conduct business in Illinois with the Illinois

Secretary of State since July 6, 2009 (as File No. 66649199).

## JURISDICTION AND VENUE

10. This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Defendant is registered to conduct business in Illinois, conducts business transactions in Illinois, operates plasma collection centers in Illinois, and has committed tortious acts in Illinois.

11. Venue is proper in Cook County because Defendant conducts business transactions in Cook County and operates plasma collection centers located in Cook County.

## FACTUAL BACKGROUND

### I. The Biometric Information Privacy Act.

12. In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

13. In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners

FILED DATE: 12/2/2019 10:34 AM    2019CH13850

were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that unique biometric identifiers could now be sold to unknown third parties.

14.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

15.    The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

>       (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
>       (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
>       (3) receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS 14/15(b).

16.    Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

17.    The BIPA also establishes standards for how companies must handle Illinois consumers' biometric identifiers and biometric information. *See*, *e.g.*, 740 ILCS 14/15(c)–(d). For example, the BIPA prohibits private entities from disclosing a person's or customer's

4

FILED DATE: 12/2/2019 10:34 AM    2019CH13850

biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

18.     The BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information, 740 ILCS 14/15(c), and requires companies to develop and comply with a written policy—made available to the public— establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

19.     Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

## II.     Octapharma Violates the Biometric Information Privacy Act.

20.     By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

21.     Unfortunately, Octapharma failed to address these concerns. Octapharma collected, stored, and used its customers' biometric data in violation of the BIPA.

22.     Specifically, when customers first donate plasma at Octapharma, they are required to have their fingerprints scanned in order to enroll them in its fingerprint database.

FILED DATE: 12/2/2019 10:34 AM    2019CH13850

23.     Octapharma uses a customer management system that requires customers to use their fingerprints to authenticate and verify their identity.

24.     Octapharma failed to adequately inform its customers of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

25.     Octapharma similarly failed to provide its customers with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying their fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. A customer who donated plasma at Octapharma does so without any knowledge of when their biometric identifiers will be removed from Octapharma's database—or if they ever will be.

26.     The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Octapharma's—whose customers are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Octapharma disregards these obligations, and instead unlawfully collected, stored, and used its customers' biometric identifiers and information without proper consent.

27.     Ultimately, Octapharma disregarded its customers' statutorily protected privacy rights by violating the BIPA.

## FACTS SPECIFIC TO PLAINTIFF CRUMPTON

28.     Plaintiff Crumpton donated plasma at Octapharma between June 2017 and August 2018.

6

FILED DATE: 12/2/2019 10:34 AM   2019CH13850

29.     Octapharma required Plaintiff Crumpton to scan her fingerprint so that it could enroll her in its membership database. Octapharma stored Plaintiff Crumpton's fingerprint data in its database.

30.     Each time Plaintiff Crumpton donated plasma, she was required to scan her fingerprint.

31.     Octapharma never informed Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used her fingerprint.

32.     Similarly, Octapharma never informed Plaintiff Crumpton of any biometric data retention policy it developed, nor whether it will ever permanently delete her fingerprint.

33.     Plaintiff Crumpton never signed a written release allowing Octapharma to collect or store her fingerprint.

34.     Plaintiff Crumpton has continuously and repeatedly been exposed to the risks and harmful conditions created by Octapharma's violations of the BIPA alleged herein.

35.     Plaintiff Crumpton now seeks liquidated damages under BIPA as compensation for the injuries Octapharma has caused.

## CLASS ALLEGATIONS

**Class Definition**: Plaintiff Mary Crumpton brings this action pursuant to 735 ILCS 5/2-801 on behalf of herself and a Class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Octapharma while residing in Illinois.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file

a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

36.    **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of individuals who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

37.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a)  whether Defendant collected, captured, or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

    b)  whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

    c)  whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers or biometric information;

    d)  whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

    e)  whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

    f)  whether Defendant complies with any such written policy (if one exists);

FILED DATE: 12/2/2019 10:34 AM   2019CH13850

g) whether Defendant used Plaintiff's and the Class's fingerprints to identify them;

h) whether the violations of the BIPA were committed negligently; and

i) whether the violations of the BIPA were committed willfully.

38. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

39. **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

FILED DATE: 12/2/2019 10:34 AM 2019CH13850

**CAUSE OF ACTION**
**Violation of 740 ILCS 14/1, *et seq.***
**(On Behalf of Plaintiff and the Class)**

40.     Plaintiff incorporate the foregoing allegations as if fully set forth herein.

41.     The BIPA requires companies to obtain informed written consent from consumers before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information . . .." 740 ILCS 14/15(b) (emphasis added).

42.     The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the consumer); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

43.     Unfortunately, Octapharma failed to comply with these BIPA mandates.

44.     Octapharma is a corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

45.     Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Octapharma (in the form of their fingerprints), as explained in detail in Section II.

FILED DATE: 12/2/2019 10:34 AM   2019CH13850

FILED DATE: 12/2/2019 10:34 AM 2019CH13850

*See* 740 ILCS 14/10.

46.     Plaintiff's and the Class's biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

47.     Octapharma violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

48.     Octapharma violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

49.     Octapharma violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

50.     Octapharma violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its customers' biometric identifiers and biometric information.

51.     By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Octapharma violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq.*

52.     On behalf of herself and the Class, Plaintiff seek: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Defendant to comply with the BIPA's requirements for the collection, storage, and use of biometric

FILED DATE: 12/2/2019 10:34 AM    2019CH13850

identifiers and biometric information as described herein; (2) liquidated damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, liquidated damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mary Crumpton, on behalf of herself and the Class, respectfully request that the Court enter an Order:

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Crumpton as representative of the Class, and appointing her counsel as Class Counsel;

B.      Declaring that Defendant's actions, as set out above, violate the BIPA;

C.      Awarding statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

E.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.      Awarding such other and further relief as equity and justice may require.

FILED DATE: 12/2/2019 10:34 AM   2019CH13850

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**MARY CRUMPTON**, individually and on behalf of all others similarly situated,

Dated: December 2, 2019

By: /s/ J. Eli Wade-Scott

One of Plaintiff's Attorneys

Benjamin H. Richman
brichman@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 62075

David Fish
dfish@fishlawfirm.com
John Kunze
kunze@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400
Firm ID: 44086

Return Date: No return date scheduled
Hearing Date: 3/31/2020 10:00 AM - 10:00 AM
Courtroom Number: 2405
Location: District 1 Court
    Cook County, IL

FILED
12/2/2019 11:46 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH13850

7553646

FILED DATE: 12/2/2019 11:46 AM  2019CH13850

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |

**Summons - Alias Summons**                      **(08/01/18) CCG 0001 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Mary Crumpton
_____
               (Name all parties)

v.

Octapharma Plasma, Inc.
_____

Case No.   2019CH13850

☑ **SUMMONS**   ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

**Summons - Alias Summons**                **(08/01/18) CCG 0001 B**

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.**

Atty. No.: 62075

Atty Name: J. Eli Wade-Scott

Atty. for: Plaintiff

Address: 350 North LaSalle, 14th Floor

City: Chicago

State: IL    Zip: 60654

Telephone: 312-242-0859

Primary Email: ewadescott@edelson.com

Witness: _____

12/2/2019 11:46 AM DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

FILED DATE: 12/2/2019 11:46 AM 2019CH13850

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

FILED DATE: 12/2/2019 11:46 AM 2019CH13850

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

**Daley Center Divisions/Departments**

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Notice and Acknowledgment of**
**Receipt of Summons and Complaint**                      **(10/12/18) CCG 0063 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MARY CRUMPTON,
_____
                              Plaintiff(s)       Case No.    2019CH13850
                                                 _____
            vs.
                                                 Defendant(s)
OCTAPHARMA PLASMA, INC.,                          Amount Claimed:   $  _____
_____
                              Defendant(s)

### NOTICE AND ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

To: Daniel Graham _____  Address: 1 Prudential Plaza, 130 E. Randolph, 3900
        (Name)

City: Chicago _____   State: IL   Zip: 60601

The enclosed summons and complaint are served pursuant to section 2--213 of the Code of Civil Procedure.

You must complete the acknowledgment part of this form and return one copy of the completed form to the sender within _____30_____ * days.

You must sign and date the acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within _____30_____ * days, you (or the party on whose behalf you are being served) may be served a summons and complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the complaint within _____60_____ ** days. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

I declare, under penalty of perjury, that this notice and acknowledgment of receipt of summons and complaint will have been mailed on ____12/3/19____ .

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 2

Notice and Acknowledgment of
Receipt of Summons and Complaint                    (10/12/18) CCG 0063 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To
e-file, you must first create an account with an e-filing service provider. Visit http://efile.
illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If
you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/
gethelp.asp.

### ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the summons and of the complaint in
the above captioned matter at:

(Please print or type)

Name: DANIEL T. GRAHAM

Address: 130 E. RANDOLPH ST. Suite 3900

City: CHICAGO      State: IL   Zip: 60601

Email: dgraham@clarkhill.com

Relationship to Entity/Authority to Receive Service of Process: ATTORNEY
(Not applicable if your are the named Defendant or Respondent.)

Dated: 12/4/19

_____
Signature

*    (To be completed by the person sending the notice.) Date for return of waiver must be at least 30 days from the date
     on which the request is sent, or 60 days if the defendant is addressed outside the United States.

**   (To be completed by the person sending the notice.) Date for answering complaint must be at least 60 days from the
     date on which the request is sent, or 90 days if the defendant is addressed outside the United States.